**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| TORITSESAN ONOSODE, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:20-CV-00951- |
| v. | § | SDJ-CAN |
| | § | |
| EQUIFAX INFORMATION SERVICES, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court are Defendant RS Clark and Associates, Inc.'s Motion for Summary Judgment [Dkt. 30] and Plaintiff Tortisesan Onosode's Motion for Summary Judgment [Dkt. 33]. After reviewing the cross Motions for Summary Judgment, the applicable responses and replies, and all other relevant filings, the Court recommends RSC's Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART**, Plaintiff's Motion for Summary Judgment be **DENIED**, and Plaintiff's claims against RSC be **DISMISSED**, as set forth herein.

**BACKGROUND**

***The Instant Lawsuit***

On December 13, 2020, Plaintiff Tortisesan Onosode ("Plaintiff") filed the instant case against Defendants Equifax Information Services, LLC and RS Clark and Associates, Inc., asserting claims under the Fair Credit Reporting Act ("FCRA") and the Fair Debt Collection Act ("FDCPA") [Dkt. 1 at 3]. Equifax Information Services, LLC was dismissed from the lawsuit on July 6, 2021 [Dkt. 20], and only RS Clark and Associates, Inc. ("RSC" or "Defendant") remains. Plaintiff asserts five causes of action in the Complaint; three are asserted against RSC, specifically: (1) willful violation of the FCRA, 15 U.S.C. § 1681s-2(a) (the Third Cause of Action), for failing

to "conduct a timely investigation of the disputed information and review all relevant information provided by the [credit reporting] agency"; (2) negligent violation of the FCRA under 15 U.S.C. § 1681s-2(b) (the Fourth Cause of Action) for failure to conduct a reasonable investigation; and (3) violation of the FDCPA (the Fifth Cause of Action) for failing to "notate the account as disputed[] after receiving notice of the Plaintiff's dispute," specifically violation(s) of 15 U.S.C. §§ 1692d, 1692e (2), 1692e (5), 1692e (8), 1692(10), and 1692f [Dkt. 1 at 9-12].

Plaintiff alleges RSC was acting as a debt collector when it disseminated information to Equifax which Plaintiff contends is inaccurate because the "debt being collected is not a legitimate charge" and "the date of the first delinquency is incorrect" [Dkt. 1 at 3]. Plaintiff pleads that, on or around June 11, 2020, Plaintiff sent a letter to Equifax disputing the accuracy of the information reported, specifically that the charge was legitimate and the first reported date of delinquency [Dkt. 1 at 4]. Relevant herein, this is the only date pleaded in the Complaint. Equifax thereafter notified RSC that Plaintiff had disputed the debt, after which, Plaintiff contends RSC failed to conduct a reasonable investigation and "continued to report false and inaccurate adverse information on the consumer report of [ ] Plaintiff with respect to the disputed account" [Dkt. 1 at 4]. Had RSC "done a proper investigation," Plaintiff argues RSC would have learned that "the underlying debt was not valid" [Dkt. 1 at 4]. Plaintiff alleges RSC further "failed to continuously mark the account as disputed" [Dkt. 1 at 4]. Plaintiff claims that RSC "continues to furnish credit data which is inaccurate and materially misleading" [Dkt. 1 at 5, 10-11]. As to the alleged injuries, Plaintiff pleads she has suffered "a decreased credit score due to the inaccurate information on Plaintiff's credit file" generally [Dkt. 1 at 5], and that she is entitled to damages for her "loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denials" [Dkt. 1 at 10-12].

***Motions for Summary Judgment***

On October 19, 2021, RSC filed its Motion for Summary Judgment [Dkt. 30]. On November 9, 2021, Plaintiff filed a response [Dkt. 34], and on November 16, 2021, RSC filed a reply [Dkt. 36]. On October 22, 2021, Plaintiff filed a Motion for Summary Judgment [Dkt. 33], and on November 12, 2021, RSC filed a response [Dkt. 35]; Plaintiff did not file a reply.

**SUMMARY JUDGMENT STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses to help "secure the just, speedy and inexpensive determination of every action." *Nat'l Cas. Co. v. Kiva Const. & Eng'g, Inc.*, 496 F. App'x 446, 449 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Certain Underwriters at Lloyd's, London v. Axon Pressure Prod. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment evidence "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

At the summary judgment stage, the moving party has the burden to show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Bucklew v. Precythe*, 139 S. Ct. 1112, 1131 (2019). "[W]here the movant bears the burden of proof at trial, the movant 'must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor.'" *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302 (5th Cir. 2020) (citation omitted). If the movant does not bear the burden of proof at trial, it is

entitled to summary judgment if "the nonmoving party has failed to make a sufficient showing on an essential element of [his or] her case with respect to which [he or] she has the burden of proof." *Gonzales v. ConocoPhillips Co.*, 806 F. App'x 289, 291 (5th Cir. 2020) (citing *Celotex*, 477 U.S. at 323). Once the movant carries its burden, the nonmovant "must go beyond the pleadings and identify specific evidence in the record showing that there is a genuine issue for trial." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 307 (5th Cir. 2020). "A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment." *Pickett v. IceCold2, LLC*, No. 4:17-CV-00666, 2019 WL 1063369, at *2 (E.D. Tex. Mar. 6, 2019) (citing *Anderson*, 477 U.S. at 257). "Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden." *Id.* Moreover, the Court is not required "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quotations omitted). Rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### SUMMARY JUDGMENT EVIDENCE

RSC submits the following evidence in support of its Motion for Summary Judgment:

Exhibit 1 [Dkt. 30-1]: Declaration of Wes Rowden (October 19, 2021);

Exhibit A [Dkt. 30-2]: Plaintiff's December 14, 2018 Letter to RSC;

Exhibit B [Dkt. 30-3]: RSC's December 19, 2018 Letter to Plaintiff;

Exhibit C [Dkt. 30-4]: Plaintiff's January 9, 2019 Letter to RSC;

Exhibit D [Dkt. 30-5]: RSC's February 13, 2019 Letter to Plaintiff;

Exhibit E [Dkt. 30-6]: Plaintiff's June 2020 Dispute Letter to Equifax (June 11, 2020);

Exhibit F [Dkt. 30-7]: RSC's Dispute Report Response to February 2020 Dispute (Automated Credit Dispute Verification form, dated Mar. 2, 2020); and

Exhibit G [Dkt. 30-8]: RSC's Dispute Report Response to June 2020 Dispute (Automated Credit Dispute Verification form, dated June 23, 2020);

Exhibit 2 [Dkt. 30-9]: Declaration of Baxter Banowsky;

Exhibit H [Dkt. 30-10]: RSC's First Written Discovery to Plaintiff (July 7, 2021);

Exhibit I [Dkt. 30-11]: Plaintiff's Responses to RSC's First Written Discovery (August 19, 2021); and

Exhibit J [Dkt. 30-12]: Plaintiff's Equifax Credit Report (August 21, 2020).

Plaintiff submits the following evidence in response to RSC's Motion:

Exhibit 1 [Dkt. 34-1]: Plaintiff's Counterstatement of Undisputed Material Facts;

Exhibit A [Dkt. 34-2]: Plaintiff's Experian Credit Report (August 21, 2020);

Exhibit B [Dkt. 34-3]: Plaintiff's December 14, 2018 Letter to RSC;

Exhibit C [Dkt. 34-4]: RSC's December 19, 2018 Letter to Plaintiff;

Exhibit D [Dkt. 34-5]: Plaintiff's January 9, 2019 Letter to RSC;

Exhibit E [Dkt. 34-6]: RSC's February 13, 2019 Letter to Plaintiff;

Exhibit F [Dkt. 34-7]: Plaintiff's June 11, 2020 Dispute Letter to Equifax;

Exhibit G [Dkt. 34-8]: Plaintiff's Equifax Credit Report (August 21, 2020);

Exhibit H [Dkt. 34-9]: RSC's Dispute Report Response to June 2020 Dispute (Automated Credit Dispute Verification form, dated June 23, 2020); and

Exhibit I [Dkt. 34-10]: Plaintiff's Responses to RSC's First Written Discovery (August 19, 2021).

Plaintiff submits the following evidence in support of her own Motion for Summary Judgment:[1]

Exhibit 1 [Dkt. 33-1]: Declaration of Plaintiff Toritsesan Onosode;

---

[1] Certain exhibits attached to Plaintiff's Motion for Summary Judgment are partial versions of the corresponding exhibit attached to Plaintiff's Response to Defendant's Motion [*Compare* Dkt. 34-3, *with* Dkt. 33-3]. The Court lists fully the summary judgment evidence as presented by the Parties for the sake of a complete factual record.

Exhibit A [Dkt. 33-2]: Eagle Creek Apartments' August 3, 2018 Letter to Plaintiff;

Exhibit B [Dkt. 33-3]: Plaintiff's December 14, 2018 Letter to RSC;

Exhibit C [Dkt. 33-4]: RSC's December 19, 2018 Letter to Plaintiff;

Exhibit D [Dkt. 33-5]: Plaintiff's January 9, 2019 Letter to RSC;

Exhibit E [Dkt. 33-6]: RSC's February 13, 2019 Letter to Plaintiff;

Exhibit F [Dkt. 33-7]: Plaintiff's June 11, 2020 Dispute Letter to Equifax; and

Exhibit G [Dkt. 33-8]: RSC's Dispute Report Response to June 2020 Dispute (Automated Credit Dispute Verification form, dated June 23, 2020).

RSC submits in response to Plaintiff's Motion for Summary Judgment one additional exhibit, the Declaration of Wes Rowden, dated November 12, 2021 [Dkt. 35-1].

No specific objections are made to the Court's consideration of any of the summary judgment evidence, separate and apart from those previously considered by the Court in connection with Plaintiff's Motion to Withdraw or Amend Plaintiff's Deemed Admissions [Dkt. 42], which the Court denied on July 21, 2022 [Dkt. 52]. More specifically, as evidence, RSC's Motion for Summary Judgment includes certain written discovery requests, including requests for admission ("RFAs"), interrogatories ("ROGs"), and requests for production ("RFPs") [Dkts. 30-9, 30-10, 30-11]. The RFAs were served on Plaintiff on July 7, 2021; Plaintiff did not timely serve any responses to the RFAs. Plaintiff later sought to withdraw the deemed admissions. The Court denied Plaintiff's request. Notably, no objections were filed to the Court's July 21 Order denying Plaintiff's request to withdraw the deemed admissions. *See* FED. R. CIV. P. 72(a).

The deemed admissions relevant to consideration of the pending Motions are:

**RFA No. 1:** Admit that the document attached hereto as Exhibit 1 is a true and correct copy of a letter from You to Equifax dated June 11, 2020.

**RFA No. 2:** Admit that RSC made an offer of judgment in the amount of $3,000 plus costs of court on January 28, 2021 in the form attached hereto as Exhibit 3.

**RFA No. 3:** Admit that You did not accept RSC's January 28, 2021, offer of judgment.

**RFA No. 4:** Admit that RSC has reported the Underlying Debt as "disputed" to the credit reporting bureaus since prior to June 11, 2020.

**RFA No. 5:** Admit that the Underlying Debt was deleted from Your credit report as of December 2020.

**RFA No. 6:** Admit that the Eagle Creek Apartments wrongfully charged you the amounts reported as delinquent on Your credit report.

**RFA No. 7:** Admit that the Eagle Creek Apartments properly charged you the amounts reported as delinquent on Your credit report.

**RFA No. 8:** Admit that, following You June 11, 2020, dispute, Eagle Creek Apartments verified to RSC that the amount reported as delinquent on Your credit report was accurate.

**RFA No. 9:** Admit that You have suffered no denial of credit as a result of the conduct alleged in the Complaint.

**RFA No. 10:** Admit that You have suffered no increase cost of credit as a result of the conduct alleged in the Complaint.

[Dkt. 52 at 2-3]. Under Federal Rule of Civil Procedure 56(c), admissions are proper summary judgment evidence that can be used to show the absence or presence of a genuinely disputed fact. *See In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001). "'[D]eemed admissions under Federal Rule Civil Procedure 36 can disprove allegations in a plaintiff's complaint' and such 'admissions are proper summary judgment evidence that can be used to show that there is an absence of a genuine issue of material fact.'" *JEMiller Invs., LLC v. VRC Cos., LLC*, No. 2:19-CV-209-BQ, 2020 WL 7010042, at *3 (N.D. Tex. Oct. 13, 2020) (quoting *Dingler v. Equifax Info. Servs., L.L.C.*, No. 3:12-cv-455-M-BF, 2014 WL 1317511, at *3 (N.D. Tex. Feb. 28, 2014) (cleaned up), *report and recommendation adopted*, 2014 WL 1325574 (N.D. Tex. Mar. 31, 2014)); *see McDonald v. Equifax Inc.*, No. 3:15-CV-3212-B, 2017 WL 879224, at *3 (N.D. Tex. Mar. 6, 2017) ("deemed admissions can disprove allegations in a plaintiff's complaint."). "Because deemed admissions

[]are conclusive as to the matters admitted, 'they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record.'" *Kirwa v. Wells Fargo Bank, N.A.*, NO. 4:18-CV-707-ALM-CAN, 2019 WL 2575058, at *3 (E.D. Tex. June 3, 2019) (citing *In re Carney*, 258 F.3d at 420), *report and recommendation adopted*, No. 4:18-CV-707, 2019 WL 2568611 (E.D. Tex. June 20, 2019).[2]

RSC also served ROGs and RFPs, including the following related to Plaintiff's alleged injuries/damages, to which Plaintiff provided untimely responses:

**INTERROGATORY NO. 1:** Identify all "persons and credit grantors" to whom inaccurate information was disseminated as alleged in Paragraph 18 of the Complaint.

ANSWER: Objection, overbroad, unduly burdensome. This Interrogatory seeks information already in Defendant's possession or its agents, in the possession, custody or control of third parties over whom Plaintiff has no control, or otherwise readily available to Defendant, and, therefore, may be accessed and obtained by Defendant with less burden than Plaintiff can identify and provide requested information.

**INTERROGATORY NO. 2:** For each of the "persons and credit grantors" to whom inaccurate information was disseminated as alleged in Paragraph 18 of the Complaint, identify the date and manner of such dissemination.

ANSWER: Objection, overbroad, unduly burdensome. This Interrogatory seeks information already in Defendant's possession or its agents, in the possession, custody or control of third parties over whom Plaintiff has no control, or otherwise readily available to Defendant, and, therefore, may be accessed and obtained by Defendant with less burden than Plaintiff can identify and provide requested information.

---

[2] Plaintiff cannot now offer documentary evidence to controvert deemed facts. *See Welford v. Equifax Info. Servs., LLC*, No. 1:20-CV-151-LG-RPM, 2020 WL 7059585, at *3 (S.D. Miss. Dec. 2, 2020) (granting summary judgment and dismissing the plaintiff's FCRA claims) ("By operation of Rule 36, however, Plaintiff is deemed to admit 'that PCS did not report any inaccurate information regarding Plaintiff to any credit reporting agency' and 'that PCS has not communicated any credit information concerning Plaintiff which is false or should be known to be false to any person. There is therefore no genuine issue of material fact on this matter'" (citation omitted)); *see also Zywczyk v. IC Sys. Inc.*, No. 5:17-CV-973-DAE, 2018 WL 6430789, at *3 (W.D. Tex. Nov. 8, 2018); *Cameron v. Greater New Orleans Fed. Credit Union*, 713 F. App'x 238, 240-41 & n.1 (5th Cir. 2018) (per curiam) (upholding grant of summary judgment based on deemed admissions negating a willfulness and actual damages under the FCRA).

**INTERROGATORY NO. 7:** If You contend You suffered a denial of credit as a result of the conduct alleged in the Complaint, state all facts which support such contention.

ANSWER: Plaintiff suffered denial of credit as a result of the conduct of RSC. Plaintiff does not possess any additional responsive information at this time.

**INTERROGATORY NO. 8:** If You contend You suffered an increased cost of credit as a result of the conduct alleged in the Complaint, state all facts which support such contention.

ANSWER: Plaintiff suffered an increase cost of credit as a result of the conduct of RSC. Plaintiff does not possess any additional responsive information at this time.

**INTERROGATORY NO. 9:** Identify each element of damage for which You are seeking recovery from RSC herein and, for each such element, state the type of damage sought, the amount of such damage, how the amount was calculated and what conduct, if any, of RSC caused You to incur such damage.

ANSWER: (1) Plaintiff seeks actual damages for, including but limited to, a decreased credit score, loss of credit, inability to apply/secure approval for additional credit due to the continued and improper reporting of the disputed account by RSC on Plaintiff's credit report. After Plaintiff's June 11, 2020, dispute letter, Defendant failed to correct its inaccurate reporting of the account. Additionally, as a result of RSC's continued inaccurate reporting, Plaintiff incurred emotional damages including worry, distress and confusion, to such an extent that he was left with no other option but to seek legal counsel to assist him, and to help alleviate his continued emotional and financial damages caused by Defendant's willful and/or negligent determination to disregard Plaintiff's dispute, failure to investigate same, and continued reporting the incorrect account information on his credit report. Finally, RSC's false reporting caused Plaintiff additional humiliation and embarrassment as his credit report was viewed by third parties and resulted in denials of credit to Plaintiff. (2) Plaintiff seeks attorneys' fees and costs associated with this litigation pursuant to §§1681n(a)(1)(A), 1681o and 1640(a)(3). Although a precise amount of damages cannot be stated, Plaintiff estimates $13,000, to date.

[Dkt. 30-11 at 4-8].

**REQUEST FOR PRODUCTION NO. 5:** All documents which evidence any actual damages You allege to have suffered as a result of any conduct alleged in the Complaint.

ANSWER: See attached [Plaintiff's Equifax credit report, dated Aug. 21, 2020]. Plaintiff does not possess any additional documents at this time.

[Dkt. 30-11 at 10; *see* Dkt. 30-12].

The Order Governing Proceedings makes clear documents not timely disclosed are not proper evidence in support of a motion [Dkt. 30 at 9-10]. Plaintiff does not explain the failure to produce documents or disclose information about the injuries alleged, precluding Plaintiff from relying on same. *See, e.g.*, *Jyue Hwa Fu v. Yeh Chin Chin*, No. 3:18-CV-2066-N-BN, 2020 WL 7049161, at *5 (N.D. Tex. Oct. 23, 2020) (rejecting evidence not produced during discovery, concluding "the appropriate remedy is to disregard [plaintiff's] supporting documents for purposes of making a recommendation on the present cross-motions."), *report and recommendation adopted*, No. 3:18-CV-2066-N-BN, 2020 WL 7047053 (N.D. Tex. Dec. 1, 2020); *Shastry v. U.S. Bank Nat'l Ass'n*, No. 3:16-CV-3335-G-BN, 2021 WL 849015, at *7 (N.D. Tex. Feb. 11, 2021) (excluding at summary judgment documents that should have been produced as Rule 26(a) initial disclosures or in response to requests), *report and recommendation adopted*, No. 3:16-CV-3335-G-BN, 2021 WL 842132 (N.D. Tex. Mar. 5, 2021); *Jarabes Veracruzanos, Inc. v. Productora de Alimentos Mexicanos, S.A. de C.V.*, No. SA-14-CA-00466-FB, 2016 WL 7486367, at *12 (W.D. Tex. Feb. 9, 2016) ("precluding [plaintiff] from relying in any way on the late produced documents" is appropriate when presented at summary judgment for the first time), *report and recommendation adopted*, No. SA-14-CA-466-FB, 2016 WL 7486368 (W.D. Tex. Apr. 8, 2016). Against this backdrop, the Court more fully outlines the undisputed material facts.

### Undisputed Material Facts

Plaintiff was a tenant of Eagle Creek Apartments. A disagreement arose between Plaintiff and Eagle Creek Apartments about charges assessed at Plaintiff's move out [Dkts. 30 at 2; 34-1 at 1]. In November 2018, Eagle Creek Apartments ("Landlord") turned Plaintiff's account over to Defendant RSC for collection, alleging a debt of $426.15 (the "Underlying Debt") [Dkts. 30 at 2; 34-1 at 3]. RSC is a debt collection agency. On or about December 14, 2018, RSC received a

letter from Plaintiff disputing the Underlying Debt [Dkts. 30 at 2-3; 34-1 at 3].  On December 19, 2018, RSC responded, stating it had investigated the disputed information and confirmed the debt, as reported by Landlord, was accurate [Dkts. 30 at 3; 30-3 at 2; 34-1 at 4].  Additionally, RSC revised its reporting to the credit bureaus to add that Plaintiff had disputed the Underlying Debt [Dkts. 30 at 3; 34-1 at 5].[3]  RSC continuously reported the Underlying Debt as disputed from December 2018 through December 2020, at which time the reporting was deleted at the Landlord's request [Dkts. 30 at 3; 34-1 at 5].  In January 2019, Plaintiff sent a second dispute notice to RSC [Dkts. 30 at 3; 30-4; 34-1 at 5].  On February 13, 2019, RSC again verified the debt was accurate as reported [Dkts. 30 at 3; 30-5 at 2; 34-1 at 5].  RSC also notified Plaintiff it considered the dispute to be frivolous pursuant to the FCRA, explaining it has "previously responded to substantially the same dispute(s) and [has] fulfilled our duty and verified the disputed information. The information forwarded previously is proper verification for your account" [Dkts. 30 at 3; 30-5 at 2; 34-1 at 5].  RSC further informed Plaintiff that "[u]nless you can provide us with any sufficient information to reinvestigate your dispute," it "will consider this claim frivolous and closed" [Dkts. 30 at 3; 30-5 at 2].  Plaintiff did not respond to RSC's request for additional information [Dkt. 30 at 3; 34-1 at 5-6].[4]  Instead, Plaintiff filed several additional disputes directly with the credit reporting agencies ("CRAs"), which they transmitted to RSC [Dkts. 30 at 3; 34-1 at 6].  RSC received notices in March 2019, February 2020, and March 2020 from Equifax [Dkts. 30 at 3; 34-1 at 6-7].[5]  Each

---

[3] RSC's December 19, 2018, letter states, "If your account has been reported to any consumer reporting agencies by us on behalf of our client, per Federal law, we will update the report to mark as disputed" [Dkts. 30-3 at 2; 34-1 at 5].
[4] Plaintiff's Counterstatement denies she did not send any further written communication regarding the debt [Dkt. 34-1 at 6].  However, Plaintiff points to no evidence of any further communication between Plaintiff and RSC in the record.  Indeed, the communication referenced in the Counterstatement is Plaintiff's June 11, 2020 dispute letter *to Equifax* not to RSC [Dkt. 34-1 at 6] (citing to Exhibit F of Plaintiff's Response).
[5] Of the three disputes Plaintiff raised directly with Equifax, only the letter related to the June 2020 Dispute is in the record; although RSC's Dispute Report Response to February 2020 Dispute is in the record [Dkt. 30-7], the corresponding letter from Plaintiff to Equifax is not.  Neither Party presents evidence related to any March 2019 dispute (either Plaintiff's dispute letter to Equifax or RCS's Dispute Report Response).

time, RSC reinvestigated the Underlying Debt by reviewing all the information provided by Equifax and that was previously received from Plaintiff and Landlord; RSC responded to Equifax each time, verifying the Underlying Debt based on same [Dkts. 30 at 4; 30-1 at 4; 34-1 at 7].

RSC received an additional electronic dispute in June 2020 (the "June 2020 Dispute") [Dkt. 30 at 4; 30-8; 34-1 at 8]. The June 2020 Dispute is the only dispute referenced in Plaintiff's Complaint [*See* Dkt. 1 at 4]. RSC investigated the dispute; the investigation once again concluded the Underlying Debt amount was accurate, as was the reported date of first delinquency [Dkt. 30 at 4; 34-1 at 9]. RSC reported the results of its reinvestigation back to Equifax on June 23, 2020 [Dkt. 30-8], specifically reporting the date of first delinquency as April 30, 2018 (not April 1, 2018) [Dkt. 30 at 4; 30-8 at 2; 31-4 at 9-10]. Plaintiff's deemed admissions further conclusively establish the following pertinent facts regarding the June 2020 Dispute:

1. RSC has reported the Underlying Debt as "disputed" to the credit reporting bureaus since prior to June 11, 2020.
2. Following the June 11, 2020, dispute, Eagle Creek Apartments verified to RSC that the amount reported as delinquent on Plaintiff's credit report was accurate.
3. Plaintiff has suffered no denial of credit as a result of the conduct alleged in the Complaint.
4. Plaintiff has suffered no increase cost of credit as a result of the conduct alleged in the Complaint.

[Dkts. 30 at 4-5; 30-9; 30-10 at 6-8].

## ANALYSIS

### *Article III Standing*

The Court first addresses the threshold issue of standing before considering the Parties' merits arguments in the pending cross-motions for summary judgment. RSC argues Plaintiff cannot show Article III standing for any of the claims alleged against it because Plaintiff cannot prove an injury in fact, particularly given that, the competent summary judgment evidence demonstrates Plaintiff admits no injury exists [Dkt. 30 at 9].

To establish Article III standing, "a plaintiff must show: (i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). At issue here is the first element—injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual or imminent,' not conjectural or hypothetical." *Spokeo, Inc. v. Roberts*, 578 U.S. 330, 339 (2016) (citing *Lujan*, 504 U.S. at 560). However, one cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Id*. at 341 (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). "At the summary judgment stage, plaintiffs 'must set forth by affidavit or other evidence specific facts, which ... will be taken to be true,' to support each element." *State v. Rettig*, 987 F.3d 518, 527-28 (5th Cir. 2021) (quoting *Lujan*, 504 U.S. at 561). Thus, where injury is the primary element at issue, as is the case here, plaintiffs "'must set forth by affidavit or other evidence specific facts' of their injury." *ESI/Emp. Sols., L.P. v. City of Dallas*, 531 F. Supp. 3d 1181, 1189 (E.D. Tex. 2021) (quoting *Lujan*, 504 U.S. at 561)). As the party invoking jurisdiction, Plaintiff "bear[s] the burden of demonstrating" standing. *TransUnion*, 141 S.Ct. at 2207.

**FCRA**

The Supreme Court recently addressed the issue of Article III standing in connection with claims under the FCRA, specifically discussing the injuries sufficient to confer standing, in *TransUnion LLC v. Ramirez*. 141 S. Ct. 2190 (2021). There, a class of 8,185 members brought FCRA claims against TransUnion for failing to use reasonable procedures to ensure the accuracy of their credit files. *TransUnion*, 141 S.Ct. at 2200. Of all the members in the class, 1,853

members had their credit report information disseminated to third parties by TransUnion, while the other 6,332 members' information was not. *Id.* at 2208-13. The Court found the 1,853 class members "whose reports were disseminated to third parties suffered a concrete injury in fact under Article III." *Id.* at 2209. However, for the other class members, the Court found that they did not suffer a concrete injury because "the mere existence of inaccurate information in a database is insufficient to confer Article III standing." *Id.* The Court articulated:

> The standing inquiry [] distinguishes between (i) credit files that consumer reporting agencies maintain internally and (ii) the consumer credit reports that consumer reporting agencies disseminate to third-party creditors. The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm.

*Id.* at 2210. The Court explained that "an asserted *risk of future harm*" is not enough to show injury in fact, and specifically relevant here, that dissemination to third parties qualifies as a cognizable injury only when such dissemination inflicts a concrete harm. *See id.* (emphasis in original). Accordingly, the Supreme Court found the remaining 6,332 plaintiffs' argument for standing "unavailing" because they did not show their internal TransUnion credit files were ever provided to third parties *and* that a denial of credit or any other injury resulted. *Id.*

RSC urges that, while Plaintiff has pleaded dissemination to "various persons and credit grantors" and loss or denial of credit [Dkt. 1 at ⁋ 18], no summary judgment evidence exists reflecting dissemination of her credit report to third parties or any other injury, as contemplated by *TransUnion*, and thus Plaintiff has fallen short of establishing Article III standing. Indeed, RSC advances that the only evidence in the record conclusively establishes the opposite, that *no* dissemination of Plaintiff's credit report occurred after RSC's duty to reinvestigate was triggered. RSC specifically addresses that none of the hard or soft credit inquiries on Plaintiff's Equifax credit report occurred after RSC's duty to investigate Plaintiff's June 2020 Dispute was triggered.

RSC continues,

> In discovery, RSC sought to determine the identity of anyone to whom Plaintiff's credit report was allegedly provided. The Plaintiff was unable to identify any dissemination of [the] credit report. Similarly, RSC asked the Plaintiff to provide (1) documents demonstrating communications between [she] and any creditor or potential creditor that denied [her] credit and (2) documents evidencing any damages [she] alleges to have suffered. In response, the Plaintiff indicated [she] has no responsive documents.

[Dkt. 30 at 9-10].  Because discovery is now closed, RSC argues summary judgment is proper because Plaintiff has not adduced any evidence of publication to any third parties during the relevant or applicable time or any other injury.

The Court agrees that Plaintiff bears the burden and has failed to show dissemination of her credit report during the relevant time, the injury found sufficient to confer standing in *TransUnion*.  As RSC urges, Plaintiff wholly failed to produce any information related to the alleged dissemination of the credit reports to third parties in response to RSC's requests for written discovery.  This case is therefore analogous to the *TransUnion* plaintiffs for whom no standing was found, since Plaintiff produced no evidence of dissemination or of any other harm:

> Here, the 6,332 plaintiffs did not demonstrate that the risk of future harm materialized—that is, that the inaccurate OFAC alerts in their internal TransUnion credit files were ever provided to third parties or caused a denial of credit. Nor did those plaintiffs present evidence that the class members were independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury) from the mere risk that their credit reports would be provided to third-party businesses.
>
> . . . .
>
> . . . The plaintiffs had the burden to prove at trial that their reports were *actually sent* to third-party businesses. The inferences on which the argument rests are too weak to demonstrate that the reports of any particular number of the 6,332 class members were sent to third-party businesses. The plaintiffs' attorneys could have attempted to show that some or all of the 6,332 class members were injured in that way. They presumably could have sought the names and addresses of those individuals, and they could have contacted them. In the face of the stipulation, which pointedly failed to demonstrate dissemination for those class members, the

inferences on which the plaintiffs rely are insufficient to support standing.

*TransUnion*, 141 S. Ct. at 2212 (emphasis added).

Plaintiff argues against this result, pointing to certain hard and soft inquiries shown on the August 21, 2020 Experian credit report[6] and August 21, 2020 Equifax credit report attached to her response [Dkt. 34 at 9-10]. Specifically, regarding the "hard pulls," Plaintiff claims inaccurate information about her debt was published "in three different instances: twice to the creditor 'Academy Mortgage Cor' based on hard inquiries on March 8, 2019, and February 8, 2020, respectively, and once to the creditor 'Lexis Nexis Metlife' based on a soft inquiry on March 17, 2019" [Dkt. 34 at 9-10; 34-1 at 18; 34-2, 34-8]. Each of these pulls or "examples" of dissemination occurred *before* Plaintiff's June 2020 Dispute sent to Equifax, which triggered RSC's duty to investigate. The record does not reflect any third-party credit inquiries *after* Plaintiff's June 11, 2020 Dispute letter. Rather, the only inquiries which post-date the June 11, 2020 Dispute letter are "Automated Consumer Interview System" inquiries [Dkt. 30 at 10; 30-12 at 4-5], which are soft inquiries triggered by the June 2020 Dispute initiated by Plaintiff.[7]

Stated differently, the inquiries referenced by Plaintiff cannot confer standing as to the June 2020 Dispute, since the inquiries occurred long before RSC's FCRA duty accrued. Until Equifax gave notice of the June 2020 Dispute to RSC, it had no duty under the FCRA that could give rise

---

[6] Plaintiff did not produce the Experian credit report during discovery now attached in response to RSC's Motion. RSC requested Plaintiff produce "[a] current copy of your credit report from each of the Consumer Credit Reporting Agencies"; Plaintiff responded that "a copy of Plaintiff's credit report from each of the CRA's is irrelevant to this case. Subject to and without waiving said objection, see attached. Plaintiff does not possess any additional documents at this time" [Dkt. 30-11 at 10]. Only the Equifax credit report produced in discovery is in the record.

[7] RSC correctly notes the only inquiries after the June 2020 Dispute are "Automated Consumer Interview System" inquiries, which are soft pulls triggered by Plaintiff's own disputes [Dkt. 30 at 10]. *See Heagerty v. Equifax Info. Servs. LLC*, 447 F. Supp. 3d 1328, 1333-34 (N.D. Ga. 2020) ("To reinvestigate and track consumer disputes, Equifax uses a software platform called 'ACIS,' which is an acronym for 'Automated Consumer Interview System.' When an Equifax ACIS operator accesses a consumer's Equifax credit file to conduct a dispute reinvestigation, the ACIS system automatically, and without prompting, provides the ACIS operator with the consumer's Insight Score . . . . that event is recorded as an 'soft inquiry'"). Still, "the latest internal Equifax inquiry is dated July 10, 2020, just 29 days later [and] under the FCRA, RSC had 30 days to re-investigate Plaintiff's dispute and report back" [Dkt. 30 at 10].

to an actionable claim.  As RSC correctly points out, as a furnisher,[8] its "duty to investigate arises only after proper notice from a credit reporting agency of a dispute by the consumer under § 1681i(a)(2)."  *See Welford v. Equifax Info. Servs., LLC*, No. 1:20-CV-151-LG-RPM, 2020 WL 7059585, at *3 (S.D. Miss. Dec. 2, 2020) (quoting *Hopson v. Chase Home Fin., LLC*, 14 F. Supp. 3d 774, 790 (S.D. Miss. 2014)).  No disclosure to third parties occurred during the time relevant to the instant litigation: after RSC's duty under the FCRA was triggered by Plaintiff's June 2020 Dispute.  Moreover, Plaintiff did not allege the March 2019, February 2020, and March 2020 electronic notices in her Complaint; to the extent Plaintiff is attempting to amend her Complaint through summary judgment briefing to assert those now, "that's a no-no."  *See Riley v. Equifax Info. Servs., LLC*, No. 2:20-CV-312-SPC-NPM, 2021 WL 3738836, at *3 (M.D. Fla. Aug. 24, 2021) (finding a plaintiff cannot amend a complaint through argument made in a brief in opposition to the defendant's summary judgment).  The hard and soft inquiries that Plaintiff points to occurred prior to RSC's duty to reinvestigate the June 2020 Dispute.[9]  *See Krausz v. loanDepot.com, LLC*, No. 22 CV 152 (VB), 2022 WL 16960928, at *3 (S.D.N.Y. Nov. 16, 2022) ("However, merely alleging there have been 'hard and soft pulls' on a credit report is akin to alleging a credit report was disseminated to unspecified persons for unspecified purposes, which courts in this circuit routinely deem conclusory."); *cf. Transunion*, 141 S. Ct. at 2208 ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form

---

[8] The FCRA establishes a duty for a consumer reporting agency "to give notice of a dispute to a furnisher of information," like Equifax here, within five business days.  *See Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) (citing 15 U.S.C. § 1681i(a)(2)).  Crucially, "[s]uch notice is necessary to trigger the furnisher's duties under Section 1681s–2(b)."  *Id.* (citing 15 U.S.C. § 1681s–2(b)(1)).

[9] Plaintiff contends *TransUnion* does not require "show[ing] any publication occurring after Defendant failed to conduct a reasonable investigation" [Dkt. 34 at 10].  But *TransUnion* does not dispose of causation as a separate element of standing.  *TransUnion*, 141 S. Ct. at 2203 (explaining that standing requires "a plaintiff to demonstrate a concrete and particularized injury *caused by the defendant* and redressable by the court.").  RSC correctly distinguishes the different FCRA obligations imposed on TransUnion (a CRA) and RSC (a furnisher); these distinct obligations impose additional duties on CRAs [Dkt. 36 at 2 & n.2].  Plaintiff has no evidence RSC's reinvestigation *caused* the earlier hard pulls, even if a hard credit inquiry could be a cognizable injury.

of relief that they seek.").

Even if the referenced hard or soft pulls were sufficient to show dissemination to a third party (and the Court were to ignore that they pre-date the relevant time), such inquiries still do not evidence sufficient concrete harm to satisfy the injury in fact element under the present circumstances. *See, e.g.*, *Krausz*, 2022 WL 16960928, at *3 (collecting cases) ("Regardless, even if the Credit Reports clearly evidenced a hard inquiry, they do not supply facts that 'name a third-party that has actually received a credit report with the allegedly inaccurate ... [a]ccount information,' nor do they show plaintiff suffered an actual credit denial, reputational harm, or any other concrete adverse consequences."); *Rosenberg v. LoanDepot, Inc.*, No. 21-CV-08719 (PMH), 2023 WL 1866871, at *4 (S.D.N.Y. Feb. 9, 2023) (citations omitted) ("Plaintiff, however, relying on *TransUnion*, argues that dissemination of a credit report, even through soft pulls, is sufficient to establish reputation injury on its own. That reliance is misplaced. . . . There is no comparable allegation of reputational harm here where, via soft pulls, existing creditors of Plaintiff's were merely able to see her Credit Report"); *Reimer v. LexisNexis Risk Sols., Inc.*, No. 3:22CV153(DJN), 2022 WL 4227231, at *8 (E.D. Va. Sept. 13, 2022). No summary judgment evidence shows Plaintiff suffered any loss or denial of credit or increased cost of credit; rather, Plaintiff has admitted no denial or increased cost of credit occurred. And although Plaintiff pleads injuries including "worry, distress and confusion" and "humiliation and embarrassment" in her Complaint; once more, Plaintiff produced no evidence of such injuries, notwithstanding that RSC specifically sought such evidence during discovery. Indeed, no evidence of any concrete harm whatsoever exists in the record before this Court. In sum, the Court finds there is no evidence of dissemination of Plaintiff's credit reports to third parties, nor of any other concrete harm or damage like denials of credit, increased cost of credit, or mental anguish. *See Bacharach v. Suntrust*

*Mortg., Inc.*, No. CIV.A. 14-962, 2015 WL 6442493, at *3 (E.D. La. Oct. 23, 2015), *aff'd*, 827 F.3d 432 (5th Cir. 2016); *see Welford*, 2020 WL 7059585, at *3.  Plaintiff's FCRA claims against RSC (the Third and Fourth Causes of Action) should be dismissed without prejudice for failure to establish an injury in fact under Article III.  *See Dionisio v. S. Fin. Sys., Inc.*, No. 5:21-CV-68-DCB-LGI, 2022 WL 2825829, at *4-7 (S.D. Miss. May 25, 2022).

**FDCPA**

The Court turns next to address Article III standing as to Plaintiff's FDCPA claim.  Plaintiff asserts the FDCPA confers standing for *per se* violations of the statute's procedural protections [Dkt. 34 at 12-15].  However, in *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, the Fifth Circuit applied *TransUnion* to claims under the FDCPA and found to the contrary, holding that *per se* violations of the FDCPA's procedural provisions are not enough to show an injury in fact for Article III standing.  45 F.4th 816, 823-26 (5th Cir. 2022).  "*TransUnion* forecloses those theories. It explicitly held that 'Article III standing requires a concrete injury even in the context of a statutory violation.'"  *Id.* at 823 (quoting *TransUnion*, 141 S. Ct. at 2205).  Applying *TransUnion* to the FDCPA, the Fifth Circuit overruled *Sayles* and is progeny, the line of cases in this circuit which previously held that mere statutory violations were enough to show an injury in fact.  *See id.* at 823-25 (citing *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017)). Thus, in the Fifth Circuit, alleging a "bare procedural violation" is not enough to allege an injury to confer standing under the FDCPA.  *Id.* at 823 (quoting *Spokeo*, 578 U.S. at 341).  Plaintiff must allege a concrete injury for both "substantive" or "procedural" violations under the FDCPA.  *See Perez*, 45 F.4th at 823-24; *see also Frank v. Autovest, LLC*, 961 F.3d 1185, 1190 (D.C. Cir. 2020) ("Article III's case-or-controversy requirement remains in effect regardless of the doctrinal test that courts apply to FDCPA claims. And as decisions by our sister circuits indicate, the Act is rife

with procedural requirements and substantive prohibitions that do not necessarily trigger concrete injuries when violated."). Notably, the Fifth Circuit's *Perez* decision follows numerous other circuits that have similarly concluded bare procedural violations of the FDCPA do not allege an injury sufficient to confer standing. *See, e.g.*, *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132 (8th Cir. 2023) (quoting *TransUnion*, 141 S.Ct. at 2205-06) (citation omitted) ("Bassett received a letter. Without more—without a concrete injury in fact—Bassett is 'not seeking to remedy any harm to herself but instead is merely seeking to ensure a defendant's compliance with regulatory law (and, of course, to obtain some money via the statutory damages).'") (collecting cases); *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021) ("Because Ward has failed to show more than a bare procedural violation of the FDCPA, he does not have standing to bring his claims"); *Frank*, 961 F.3d at 1189 (quoting *Spokeo*, 136 S. Ct. at 1550) ("Nothing in the FDCPA suggests that every violation of the provisions implicated here—no matter how immaterial the infraction—creates a cognizable injury. . . . Nor is it enough for Frank to simply point to the false statements in the [communications], because 'not all inaccuracies cause harm or present any material risk of harm.'"); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (quoting *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)) ("An FDCPA plaintiff must allege a concrete injury regardless of whether the alleged statutory violation is characterized as procedural or substantive. . . . [she] must allege (and later establish) that the statutory violation harmed [her] 'or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'") (cleaned up); *see also Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 546 n.1 (9th Cir. 2020) (citations omitted) ("Some of our prior cases have held that a plaintiff alleges a cognizable injury in fact merely by alleging a violation of the FDCPA. The analysis in those cases is 'clearly irreconcilable' with *Spokeo I* and has been

abrogated."); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1000 (11th Cir. 2020).

In response to RSC's Motion, Plaintiff argues she "does not need to establish any separate harm arising from the alleged procedural violations in order to have standing," and RSC's violation "establish[es] injuries-in-fact in their own right" [Dkt. 34 at 12]. Plaintiff is mistaken. This is the exact type of "bare procedural violation" insufficient to confer standing under *TransUnion*. *See Perez*, 45 F.4th at 823 (citing *Spokeo*, 578 U.S. at 341; *TransUnion*, 141 S. Ct. at 2205) (rejecting the plaintiff's "claims that the violation of her statutory rights under the FDCPA itself qualifies as a concrete injury"). The authority Plaintiff cites relies on *Sayles*, which, again, was overruled by *Perez*.[10] Nor are injuries like "confusion" or "worry" concrete injuries under the FDCPA, both of which Plaintiff alleges in her cross-motion, albeit without pointing to any summary judgment evidence. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (applying *TransUnion* to the FDCPA) ("Psychological states induced by a debt collector's letter likewise fall short. . . . Confusion, we have held, is not a concrete injury in the FDCPA context."). Receiving a misleading letter is not enough to allege an injury under the FDCPA. *See Perez*, 45 F.4th at 824 ("[Plaintiff] says the confusion she experienced from MVBA's letter qualifies as a concrete injury. The district court endorsed that theory, but we disagree."); *Norwood v. United Med. Recovery, LLC*, No. 4:21-CV-134-DMB-JMV, 2022 WL 4088081, at *4 (N.D. Miss. Sept. 6, 2022) (citing *Perez*, 45 F.4th at 825) (citation omitted) ("[Plaintiff's] complaint does not allege she suffered from emotional distress but rather she 'was confused and misled' by the letter. Such is insufficient to confer standing for her FDCPA claim under *Perez*.").

---

[10] Plaintiff refers the Court to the following authority, which it finds no longer persuasive in light of *Perez*, see *Kranz v. Midland Credit Mgmt., Inc.*, No. SA-18-CV-169-XR, 2020 WL 3899223, at *6 (W.D. Tex. July 10, 2020) (relying on *Sayles* and district court cases applying it to find that "mere procedural violations" are enough); *Smith v. Moss L. Firm, P.C.*, No. 3:18-CV-2449-D, 2020 WL 584617, at *4 (N.D. Tex. Feb. 6, 2020) (same); *Banks v. Kottemann L. Firm*, No. CV 19-375-JWD-EWD, 2021 WL 1200090, at *12-13 (M.D. La. Mar. 30, 2021) (same); *Ngo v. NPAS, Inc.*, No. CV 20-566, 2021 WL 149121, at *3-4 (E.D. La. Jan. 15, 2021) (same); *Barkley v. Santander Consumer USA Inc.* [*In re Martin*], 617 B.R. 866, 875 (Bankr. S.D. Miss. 2020) (same).

Plaintiff finally contends that some courts distinguish bare violations of § 1692g from procedural violations of § 1692e or § 1692f, finding the latter do confer standing [Dkt. 34 at 14-15]. But *Perez* and cases from other circuits expressly reject that a procedural violation of § 1692e or § 1692f constitutes an injury in fact. *See Perez*, 45 F.4th at 826 (explaining that § 1692e requires showing economic harm because "Congress didn't elevate the receipt of a single, unwanted message to the status of a legally cognizable injury in the FDCPA."); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 900 (7th Cir. 2020) ("Nettles alleges that Midland violated §§ 1692e and 1692f when it overstated the amount of her debt in its collection letter. But her complaint does not allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her."). Plaintiff's FDCPA claim against RSC (the Fifth Cause of Action) should be dismissed without prejudice for failure to establish an injury in fact to confer Article III standing.

### *RSC's Remaining Grounds for Summary Judgment*[11]

#### **Violations of the FCRA**[12]

RSC urges both of Plaintiff's FCRA claims are subject to dismissal for two additional reasons: first, as to the claim for violation of 15 USC § 1681s-2(a), there is no private cause of action created by this section; and second, that Plaintiff's claim for negligent violation of the FCRA must fail because the deemed admissions and summary judgment evidence conclusively establish that RSC fully complied with its obligations under 15 USC § 1681s-2(b) [Dkt. 30 at 12-15]. As for the first ground, RSC is correct that "numerous courts have found, § 1681s-2(a) does not create

---

[11] The Court recommends summary judgment be granted for RSC and each of Plaintiff's claims be dismissed for lack of standing. However, out of an abundance of caution, and in the event the District Court disagrees with such recommendation, the undersigned briefly addresses the remaining grounds for summary judgment.

[12] The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2, requires that "furnishers of information. . . provide accurate information," 15 U.S.C. § 1681s–2(a), and imposes certain duties on "furnishers of information upon notice of dispute," 15 U.S.C. § 1681s–2(b). "This notice … trigger[s] the furnisher's duties to investigate and correct the credit report under Section 1681s–2(b) of the FCRA." *Schoch v. Wells Fargo Home Mortg.*, No. 4:16-CV-619-ALM-CAN, 2017 WL 2385626, at *4 (E.D. Tex. Apr. 11, 2017), *report and recommendation adopted*, No. 4:16-CV-619, 2017 WL 2312079 (E.D. Tex. May 26, 2017).

a private right of action." *Owens v. TransUnion, LLC*, No. 4:20-CV-665-SDJ-KPJ, 2021 WL 5086370, at *5 (E.D. Tex. Aug. 30, 2021) (collecting cases), *report and recommendation adopted as modified on other grounds*, No. 4:20-CV-665-SDJ-KPJ, 2021 WL 4451890 (E.D. Tex. Sept. 29, 2021); *see Schoch v. Wells Fargo Home Mortg.*, No. 4:16-CV-619-ALM-CAN, 2017 WL 2385626, at *3 (E.D. Tex. Apr. 11, 2017) ("[T]he consensus among courts in the Fifth Circuit is that there is no private right of action for a claim under § 1681s–2(a)."), *report and recommendation adopted*, No. 4:16-CV-619, 2017 WL 2312079 (E.D. Tex. May 26, 2017). Thus, Plaintiff's Third Cause of Action should be dismissed, leaving only the remaining Fourth Cause of Action under the FCRA.

To show a furnisher of credit information—like RSC— violated the FCRA, Plaintiff must prove four elements: "(1) the furnisher provided inaccurate credit information about Plaintiff to a [consumer reporting agency ("CRA")]; (2) Plaintiff notified a CRA that this information in his or her credit report was inaccurate; (3) the CRA notified the furnisher of the dispute; and (4) after receiving this notice, the furnisher failed to conduct a reasonable investigation and provide notice to the CRA to correct the reporting errors." *Paul v. Trans Union, LLC*, No. 4:20-CV-00794-SDJ-CAN, 2021 WL 3503393, at *4 (E.D. Tex. July 21, 2021) (quoting *Palmer v. Online Info. Servs., Inc.*, No. 6:19-CV-00352-JCB-JDL, 2020 WL 7658063, at *6 (E.D. Tex. Nov. 9, 2020), *report and recommendation adopted,* No. 6:19-CV-00352, 2020 WL 7388963 (E.D. Tex. Dec. 16, 2020)), *report and recommendation adopted*, No. 4:20-CV-794, 2021 WL 3487485 (E.D. Tex. Aug. 9, 2021). RSC argues the first and fourth elements are unsupported by any record evidence. Relevant to both elements, Plaintiff must "demonstrate actual inaccuracies in the furnished information that a reasonable investigation could have discovered." *Hall v. LVNV Funding*, No. 6:16CV36, 2017 WL 6403049, at *3 (E.D. Tex. Aug. 11, 2017), *report and recommendation*

*adopted*, No. 6:16-CV-00036-RWS, 2017 WL 6403048 (E.D. Tex. Sept. 11, 2017); *Palmer*, 2020 WL 7658063, at *7 (citing *Childs v. Resident Collect, Inc.*, No. 3:15-CV-1001-P, 2017 WL 3980621, at *8 (N.D. Tex. Sept. 11, 2017)).  Notably, a reasonable investigation under the FCRA does not put a furnisher into the position to decide legal questions because it is "neither qualified nor obligated to resolve [such questions] under the FCRA."  *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 69 (1st Cir. 2008); *see Block v. Real Time Resols., Inc.,* No. 3:20-CV-01592, 2021 WL 2559260, at *9 (W.D. La. June 8, 2021) (quoting *Solus v. Regions Bank*, No. 19-2650, 2020 WL 4048062, at *4 (N.D. Ga. July 17, 2020)) ("In fact, a 'reasonable investigation does not require [credit reporting agencies] to resolve legal disputes about the validity of the underlying debts they report.'"), *report and recommendation adopted*, No. 3:20-CV-01592, 2021 WL 2554919 (W.D. La. June 22, 2021); *Batterman v. BR Carroll Glenridge, LLC*, No. 1:19-CV-1598-CC-RDC, 2020 WL 1821322, at *6 (N.D. Ga. Apr. 10, 2020), *aff'd*, 829 F. App'x 478 (11th Cir. 2020).  And in this regard, the Court finds *Batterman* instructive; there the court explained a dispute between a landlord and tenant over the validity of underlying charges is ultimately a legal dispute and not an "inaccuracy" within the meaning of the FCRA; a furnisher thus has no duty beyond verifying the amount with the landlord.  *See* 2020 WL 1821322, at *6-7.

Here, summary judgment is warranted on Plaintiff's Fourth Cause of Action based on the lack of competent evidence alone [Dkt. 30 at 12-15].  *See Childs*, 2017 WL 3980621, at *10 ("Plaintiff's contentions regarding the validity of the charges, however, are conclusory and not supported by competent summary judgment evidence.").  And while Plaintiff urges that under § 1681s-2(b), RSC had a heightened duty to go beyond the information reported by the Landlord to investigate whether the Underlying Debt "was not actually owed" [Dkt. 34 at 21-22], RSC maintains that this duty to reinvestigate is imposed on furnishers only after receipt of notice of a

dispute from a CRA. The record evidence and deemed admissions show RSC did conduct a reasonable investigation. Further, Plaintiff has admitted the "amount reported as delinquent on Your credit report was accurate."[13] *See McDonald*, 2017 WL 879224, at *6 (citing *In re Carney*, 258 F.3d at 420) ("Plaintiff admitted that all of the Experian reports were accurate. . . . and because such admissions concern an essential element of Plaintiff's claims against Experian for both negligent and willful violations of the FCRA, summary judgment is appropriate for Experian on Plaintiff's FCRA claims."). Therefore, RSC is entitled to summary judgment on each of Plaintiff's FCRA claims against it. *See, e.g.*, *Hall*, 2017 WL 6403049, at *3 (granting summary judgment where "Defendant investigated the dispute, verified that the information that was reported to the credit reporting agencies was consistent with its records and reported the results of its investigation to the [CRA]").[14]

### Violations of the FDCPA

The FDCPA governs actions by debt collectors against consumers and is intended "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." *Peter v. GC Servs. L.P.*, 310 F.3d 344, 351-52 (5th Cir. 2002) (citation omitted).[15] Plaintiff's Complaint alleges RSC violated the FDCPA "by failing to notate the account as disputed, after receiving notice of the Plaintiff's dispute" [Dkt. 1 at 12]. Notably, these are the only specific facts alleged in the Complaint related

---

[13] "[P]roving inaccuracies in a credit report is an essential element of proving a violation under § 1681e(b) and § 1681i." *McDonald*, 2017 WL 879224, at *6.

[14] Finally, to the extent Plaintiff now argues RSC did not initially verify the debt when reported in November 2018, this claim is not pleaded and is also time-barred [Dkt. 36 at 1-2]. The record evidence confirms RSC's initial reporting occurred in November 2018 (which Plaintiff does not controvert) [*See* Dkts. 30-7; 36 at 1]. A suit under the FCRA must be brought "not later than" two years "after the date of discovery by the plaintiff of the violation that is the basis for such liability." *Baker v. Puckett*, NO. 4:18-CV-00599-ALM-CAN, 2020 WL 574812, at * 9 (E.D. Tex. Aug. 13, 2020), *report and recommendation adopted*, No. 4:18-CV-599, 2020 WL 5630402 (E.D. Tex. Sept. 21, 2020); 15 U.S.C. § 1681p. Moreover, "with each dispute filed, or with each credit report issued, a new limitations period begins." *Owens*, 2021 WL 5086370, at *8. Any violation prior to December 13, 2018 is time-barred.

[15] No Party disputes RSC's status as a debt collector as defined by the FDCPA, that Plaintiff is as a "consumer," or that the Underlying Debt is a "debt" under the statute. *See* 15 U.S.C. § 1692a(3), (5), (6).

to violations of the FDCPA [Dkt. 1 at 12]. Plaintiff's response further advances that RSC violated the FDCPA "by misrepresenting the amount of the debt, the fact that it was owed, and the date of default on the alleged debt" [Dkt. 34 at 24, 26-27]. RSC contends no summary judgment evidence supports any such allegations, and in fact, the evidence shows RSC properly reported the debt as disputed at all relevant times in the amount verified by the Landlord.

No evidence exists to support Plaintiff's FDCPA claim. *See Palmer*, 2020 WL 7658063, at *12 ("As it stands on the summary judgment record before it, OIS has established that there is no triable issue of fact with respect to Plaintiff's FDCPA claim and Plaintiff does not point to any evidence that OIS's actions would have misled the least sophisticated consumer."); *Spencer v. Santander Consumer USA, Inc.*, No. 3:12-CV-01952-P, 2013 WL 12101079, at *3 (N.D. Tex. Mar. 19, 2013) ("the evidence at summary judgment fails to establish that Defendant committed a statutorily-defined bad act" such as "evidence of impermissible communication, harassment or abuse, false or misleading statements, unfair practices, or debt validation shortcomings"). Plaintiff's August 21, 2020 Equifax credit report states of the Underlying Debt: "CONSUMER DISPUTES THIS ACCOUNT INFORMATION" [Dkt. 30-12 at 7; 34-1 at 12]. Moreover, the evidence reflects RSC never reported the Underlying Debt in an amount other than that *repeatedly* validated by the Landlord.[16] There is no genuine issue of material fact as to whether RSC misrepresented or use deceptive means to collect a debt from Plaintiff that it knew was not valid. *See Mack v. Progressive Fin. Servs., Inc.*, No. 4:13CV544, 2015 WL 123742, at *5 (E.D. Tex. Jan. 8, 2015) (finding no material fact for misrepresentation of the character, amount, or legal

---

[16] RSC urges in its reply that any FDCPA allegations related to direct communications between RSC and Plaintiff are time barred, since the FDCPA has a one-year statute of limitations [Dkt. 36 at 3-4]. An FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 16925k(d). The limitations period for FDCPA claims begins to run when the violation occurred, "not the date on which the violation is discovered." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019). Here, any FDCPA claims related to communications prior to December 13, 2019, are time-barred, which here is *every* communication between RSC and Plaintiff in the record, since the latest date of any such communication is RSC's February 13, 2019 Letter to Plaintiff [*See* Dkt. 30-5].

status of the alleged debt).  Plaintiff's deemed admissions further dictate this conclusion: "Admit that RSC has reported the Underlying Debt as 'disputed' to the credit reporting bureaus since prior to June 11, 2020" [Dkt. 30-10 at 6].  *See Cousins v. Portfolio Recovery Assocs., LLC*, No. 1:16-CV-852-LY, 2017 WL 5077900, at *3 (W.D. Tex. Nov. 3, 2017) ("As deemed admissions 'cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record,' [plaintiff] cannot prove that [defendant] has engaged in an act or omission prohibited by the FDCPA"), *report and recommendation adopted*, No. 1:16-CV-852-DAE, 2018 WL 1627669 (W.D. Tex. Jan. 17, 2018).

Plaintiff argues again that RSC had an obligation to independently determine the validity of the Underlying Debt.[17]  Plaintiff's collateral challenge to the validity of the Underlying Debt does not give rise to an FDCPA claim.  *See Ducrest v. Alco Collections, Inc.*, 931 F. Supp. 459, 462 (M.D. La. 1996) ("The basis of plaintiff's claim under the FDCPA should be that defendant has acted unscrupulously in attempting to collect a debt, not that the debt collector is attempting to collect a debt she doesn't owe. The validity of the debt would only be at issue if this were a suit by defendant to collect the debt. The focus of this inquiry is on the debt collector's conduct."). Indeed, this basis for liability fails under the FDCPA just as it does under the FCRA.  The FDCPA "does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt, nor does it require the debt collector to dispute the creditor's construction of a contract." *Palmer v. ProCollect, Inc.*, No. 6:19-CV-82-JDK, 2020 WL 4677570, at *5 (E.D. Tex. May 5, 2020); *Hoestenbach v. AFNI, Inc.*, No. 1:20-CV-818-LY, 2021 WL 2909144, at *5 n.3 (W.D. Tex. Feb. 26, 2021) (same) (quoting *Ducrest v. Alco Collections, Inc.*,

---

[17] Plaintiff cites out-of-circuit authority for the proposition that "a misrepresentation concerning the amount of the debt owed constitutes a valid FDCPA claim" and that "misrepresenting a debt as validly owing is a violation" [Dkt. 34 at 26-27].  Each of the cases cited by Plaintiff is distinguishable because those defendants tried to collect a debt with a facially incorrect amount or an already-paid debt on a closed account.

931 F. Supp. 459, 462 (M.D. La. 1996)), *report and recommendation adopted*, No. 1:20-CV-818-LY, 2021 WL 2878554 (W.D. Tex. Mar. 3, 2021).[18]  Here, the evidence shows RSC satisfied its duty by confirming the validity of the amount of the Underlying Debt with the Landlord and enclosing the information it used for such validation in its response to Plaintiff [Dkts. 30-3; 34-4]. *See Calogero*, 2022 WL 2704470, at *9 ("Plaintiffs are wrong to suggest that Defendants' statement of the accurate, current total debt was misleading because it was not readily apparent to Plaintiffs how or why they owed the debt to Road Home.").  Plaintiff makes no argument that this verification violates § 1692g, instead asserting RSC cannot rely on information from the Landlord to escape liability under §§ 1692e and 1692f [Dkt. 34 at 27].[19]  But again, there is no evidence RSC sent misleading communications in violation of § 1692e or 1692f.  RSC verified the debt and provided information to Plaintiff showing its earlier statements were not false or misleading; therefore, there is no violation of § 1692e or 1692f.  *See id.* at *8 ("where a debt collector provides the debtor with the 'total, present quantity' of the debt . . . the debt collector's failure to provide detailed disclosures of a precise breakdown of the debt 'does not transform [its] otherwise-straightforward letter into a false, deceptive, or misleading one" in violation of § 1692e").  No

---

[18] Moreover, "a debt collector need not itemize the constituent components of, or the basis for, the principal debt." *Calogero v. Shows, Cali & Walsh, LLP*, No. CV 18-6709, 2022 WL 2704470, at *9 (E.D. La. July 12, 2022).  "[T]he text [of the FDCPA] does not require the debt collector to explain to the debtor how the creditor tallied the amount of the debt. The affirmative duty to provide some information suggests that there is no comparable duty to provide other information, such as the back-up for the 'amount' of the debt." *Id.* (emphasis in original) (quoting *Vogel v. McCarthy Burgess & Wolff, Inc.*, 2020 WL 6134987, at *7 (N.D. Ill. Oct. 19, 2020)).  "When prohibiting misleading statements, the statutory text merely refers to 'the ... amount' of the debt as a whole, without slicing and dicing the amount into separate pieces. The 'amount' of the debt does not mean the basis for the debt." Id. (internal citation omitted) (quoting *Vogel*, 2020 WL 6134987, at *8) (cleaned up).  "The statutory term merely 'refers to the size of the debt, not how the debt got there in the first place.'" Id.  "To conclude otherwise would put an unreasonable burden on the debt collector to identify each transaction the debtor made that aggregated into the total debt." Id.

[19] Plaintiff's out-of-circuit case is not instructive; the court there found *no underlying validation* at all where the defendant wrongly attempted to collect a credit card debt paid and settled six years earlier. *See Bell v. Northland Grp.*, No. 17-12746, 2018 WL 1792368, at *1-2 (E.D. Mich. Apr. 16, 2018).  RSC does not need to prevail on a "good faith" defense to §§ 1692e or 1692f because proper verification under § 1692g shows no misrepresentation occurred. *See Calogero*, 2022 WL 2704470, at *8 n.49; *see Bentson*, 2017 WL 9250308, at *7 ("[N]o record evidence demonstrates Defendant knowingly used unfair or unconscionable practices . . . [in] violation of Section 1692f.").

genuine issue of material fact remains as to the FDCPA claim.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff has filed a cross motion for summary judgment on her FCRA and FDCPA claims against RSC [Dkt. 33]. RSC urges its standing and merits arguments apply equally to Plaintiff's motion, which cannot controvert the deemed admissions nor add allegations not pleaded in the original Complaint. The Court agrees. "It is well settled in our circuit that '[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.'" *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (quoting *Cutrera v. Bd. of Supervisors of La. St. Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)) (collecting cases). The Fifth Circuit has "repeatedly emphasized this rule." *Id.* at 188-89. The rationale for such rule is equally applicable to arguments raised here for the first time in a cross-motion for summary judgment, since it would prejudice RSC to permit Plaintiff to raise new allegations only after RSC moved for summary judgment; this is "precisely the sort of surprise switcheroo that [the Fifth Circuit's] precedents forbid." *See id.* at 189.[20] Even were the Court to consider the new allegations, summary judgment should still be denied for lack of standing, or alternatively on the merits, since the uncontroverted summary judgment evidence shows no facts remain in dispute.

## RSC'S REQUEST FOR ATTORNEY'S FEES

RSC moves for attorney's fees under the FDCPA and FCRA, alleging Plaintiff brought this lawsuit in bad faith [Dkt. 30 at 16-18]. Section 1692k(a)(3) of the FDCPA provides, in relevant part: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable

---

[20] The Court declines to "construe[] [Plaintiff's] new summary-judgment argument as an implied motion to amend the[] complaint," as this leniency is "normally reserved for *pro se* litigants." *See Jackson*, 3 F.4th at 189 ("Plaintiffs' counsel never moved to amend under Rule 15. Their failure to do so forfeited the issue and prevented the district court from considering the merits of their summary-judgment argument.").

in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). "The Court's authority to award attorney's fees and costs under § 1692k is discretionary." *Rodriguez v. IC Sys.*, No. EP-16-CV-00186-DCG, 2017 WL 2105679, at *2 (W.D. Tex. May 12, 2017). Section 1681n(c) of the FCRA provides: "Upon a finding by the court that an unsuccessful pleading . . . was filed in bad faith or for purposes of harassment, the court shall award to the prevailing party attorney's fees in relation to the work expended in responding to the pleading, motion, or other paper." 15 U.S.C. § 1681n(c); *see* 15 U.S.C. § 1681o(b) (same). "Bad faith conduct includes conduct that is motivated by improper purposes such as harassment or delay." *Budri v. FirstFleet Inc.*, No. 3:19-CV-0409-N-BH, 2021 WL 849012, at *6 (N.D. Tex. Feb. 18, 2021) (citing *Coghlan v. Starkey*, 852 F.2d 806, 814 (5th Cir. 1988)), *report and recommendation adopted*, No. 3:19-CV-0409-N-BH, 2021 WL 842123 (N.D. Tex. Mar. 5, 2021). "The evidence supporting a finding of bad faith 'must be so direct and weighty as to leave the factfinder with a firm belief in the truth of the facts of the case.'" *Id.* (quoting *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001)).

RSC argues that Plaintiff's claims are frivolous, having brought this suit after forcing RSC to reinvestigate the Underlying Debt six times [Dkt. 30 at 16]. More specifically, it requests the Court find Plaintiff's claims against it "were filed in bad faith and for the purposes of harassment," and offers the following justification for seeking attorney's fees under both the FDCPA and FCRA:

> Such finding is justified by the allegations in the Complaint when considered in the context of the summary judgment evidence and the Plaintiff's wholesale failure to engage in the litigation process by providing meaningful and substantive discovery. RSC contends that this this action was filed to coerce RSC to delete the reporting of the Underlying Debt to the credit bureaus, regardless of its validity, and to extract a monetary settlement from RSC with the threat of costly litigation.

[Dkt. 30 at 18]. RSC has not yet been found to be the prevailing party in this case, and further, RSC must submit evidence supporting the predicate finding of bad faith or purpose of harassment. The Court recommends RSC's fee request be denied without prejudice to refiling by way of a post-

judgment motion under Federal Rule of Civil Procedure 54(d).  *See Whatley v. AHF Fin. Servs., LLC*, No. 4:11-CV-488, 2012 WL 4062508, at *3 (E.D. Tex. Aug. 16, 2012) (citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir.1985)) ("the Fifth Circuit has found that recovery of attorney's fees under 15 U.S.C. § 1692k is only available after the merits of the plaintiff's case have been adjudicated, and the defendant prevails. . . . Accordingly, 15 U.S.C. § 1692k contemplates a post-trial proceeding, following a judgment on the merits of a plaintiff's case . . . Nothing here precludes Defendant from moving for attorney's fees if Defendant prevails on Plaintiff's FDCPA claim."), *report and recommendation adopted*, No. 4:11-CV-488, 2012 WL 4059906 (E.D. Tex. Sept. 14, 2012); *see also Budri v. FirstFleet Inc.*, No. 3:19-CV-0409-N-BH, 2019 WL 5587181, at *12 n.16 (N.D. Tex. Sept. 20, 2019) ("To the extent Defendants seek attorneys' fees based on Plaintiff's FCRA claim, they may file a post-judgment request under Federal Rule of Civil Procedure 54(d)(2)"), *report and recommendation adopted*, No. 3:19-CV-00409-E-BH, 2019 WL 5579971 (N.D. Tex. Oct. 29, 2019); *Allen v. Scott*, No. 3:10-CV-02005-F, 2011 WL 219568, at *3 (N.D. Tex. Jan. 19, 2011) (same).

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends (1) that Defendant RS Clark and Associates, Inc.'s Motion for Summary Judgment [Dkt. 30] be **GRANTED**, save and except for RSC's request for an award of attorney's fees pursuant to the FCRA and FDCPA which should be denied without prejudice to refiling by way of a post-judgment motion under Rule 54(d); (2) that Plaintiff Tortisesan Onosode's Motion for Summary Judgment [Dkt. 33] be **DENIED**; and (3) Plaintiff's claims against RSC be **DISMISSED**.  As to RSC's request for fees, the Court recommends that RSC be directed to file any motion for attorney's fees alongside supporting evidence within fourteen (14) days following entry of any memorandum adopting this report.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 29th day of March, 2023.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE